IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-01970-WYD-CBS

JENNIFER V. HYDEN,

    Plaintiff,

v.

FORD MOTOR CREDIT COMPANY, a Delaware Corporation authorized to do business in the State of Colorado,

    Defendant.

## ORDER

I.     INTRODUCTION

THIS MATTER is before the Court on the Defendant's Motion for Summary Judgment (docket #36), filed September 28, 2007. The Defendant's motion seeks summary judgment on Plaintiff's claims alleging breach of contract, waiver, breach of implied covenant of good faith and fair dealing, willful breach of contract, and wrongful termination on the basis of gender discrimination under Title VII of the Civil Rights Act. On October 18, 2007, Plaintiff filed her response indicating that she "agrees that this court should issue summary adjudication on Plaintiff's Second, Third, Fourth, and Fifth claims (respectively, for Breach of Contract, Waiver, Breach of Implied Covenant of Good Faith and Fair Dealing, and Willful Breach of Contract) against Defendant, and dismiss said claims, based upon the results of the discovery conducted by the parties to these proceedings." (Resp. at 1-2.) Accordingly, I grant summary judgment as to

Plaintiff's claims for breach of contract, waiver, breach of implied covenant of good faith and fair dealing, and willful breach of contract in favor of the Defendant. For the reasons stated below, Defendant's motion for summary judgment with respect to Plaintiff's claim for wrongful termination based on gender discrimination under Title VII of the Civil Rights Act is denied.

II. FACTUAL BACKGROUND

This action arises from the alleged wrongful termination of Plaintiff Jennifer Y. Hyden. In November of 2000, Plaintiff accepted a full time position with Ford Motor Company in their Ford College Graduate Program ("FCG"). She began her employment in the summer of 2001. Plaintiff understood that in accepting a position with Ford in its FCG program, she would be subject to rotations that may include different geographic locations. Plaintiff's first full time position in Ford's FCG program was in the Colorado Springs Service Center ("CSSC"). Her position at the CSSC was in the human relations business operations ("HRBO") rotation, which was scheduled to last for approximately 18-24 months.

When Plaintiff was coming up on 18 months of employment in her HRBO position at the CSSC, she requested a delay in her required rotation due to family illness. After her first delayed rotation, Plaintiff spoke with her supervisor, Mr. Bill Cooley, on a monthly basis about her rotation. Plaintiff's conversations with respect to her rotation continued for a year with Mr. Cooley. Family events made a rotation difficult for the Plaintiff. In January of 2005, the Plaintiff again discussed her rotation with Gail Southwell, Mr. Cooley's supervisor, in a conference call. During the

conference call, Ms. Southwell advised the Plaintiff that she needed to rotate and needed to know whether Plaintiff would agree to a rotation. The next fact is disputed. The Defendant claims that the Plaintiff advised Ms. Southwell several days after the conference call that she would not accept a rotation at this time and would pursue a cross functional position in the CSSC. Defendant also claims that Plaintiff stated that she and her husband decided they wanted to stay in Colorado. Ms. Southwell informed the Plaintiff that if she declined to rotate, she would be considered to have voluntarily quit her employment.

Plaintiff, on the other hand, argues that she advised Ms. Southwell and Mr. Cooley that the she could not accept an immediate out of state rotation because of her husband's serious, chronic, and potentially paralyzing illness. Instead of refusing the rotation, Plaintiff states that she requested a delay in the ordered rotation due to exigent family circumstances. Plaintiff further states that at all times, she reiterated her desire to rotate to a labor position and her willingness to relocate geographically. Plaintiff states that she simply requested that the rotation be delayed a few months due to her husband's illness. Plaintiff argues that she never voluntarily terminated her employment with Defendant.

On January 27, 2005, the Plaintiff sent an email to Mr. Mark Rickey at the CSSC indicating that she would be leaving the company. Plaintiff stated in the email that due to personal and family reasons, Plaintiff was not willing to accept a relocation out of Colorado Springs, which was required under the FCG program. Plaintiff states in her response to the motion for summary judgment that she made the statement in the email

that she was not willing to accept a relocation out of Colorado Springs, because she was not willing to do so at that time. Plaintiff further states that because her representatives "ordered her to accept the relocation immediately or be considered a voluntary quit, that Ms. Hyden believed, and stated in that e-mail that '[t]he only option is separation from Ford.'" (Resp. at 12.) Plaintiff finally stated that the email was not a letter of resignation or a statement that Plaintiff's termination was voluntary.

Plaintiff also asserts that Pete Rogers, a Ford FCG male employee, was treated more favorably than her. Mr. Rogers was a Ford employee in the FCG program from January of 2002 until January of 2006. Mr. Rogers' first rotation as a Ford FCG employee was at the Twin Cities Assembly Plaint as a labor relations associate. Mr. Rogers was employed at the Twin Cities Assembly Plant in Minnesota in a labor relations rotation for two years. In December of 2003, Mr. Rogers was rotated to the Brownstown Parts Redistribution Center in Southeast Michigan. The following fact is in dispute. The Defendant states that the position held by Mr. Rogers at the Brownstown Parts Redistribution Center had responsibilities over both labor relations and salaried activities as a generalist position.

Plaintiff, on the other had, states that Mr. Rogers' position at Brownstown was titled as a Plant Business Partner, and was in fact categorized as a Labor Relations/Plant Business Partner rotation. Plaintiff further claims that this position is identical to the rotation in which Mr. Rogers had already served two years previously at the Twin Cities Assembly Plant. Thus, contrary to Defendant's guidelines for rotations in its FCG program, Plaintiff states that Mr. Rogers served four straight years in labor

relations positions, with no time in human resource business operations until his completion of the FCG program. Mr. Rogers then transferred to the Tampa Bay Customer Service Center in January of 2006. Plaintiff claims that although Mr. Rogers rotated geographically, he did not rotate functionally, as required by Defendant's FCG program guidelines. Defendant's FCG program specifies that participants should have a total of three functional rotations in the following areas: (1) 18-24 months in Labor Relations/Plant Business Partner; (2) 12-18 months in Division/HR Business Operations (HRBO); and (3) 12 months in an "Other" assignment (i.e. Recruiting, Training, HRCC, etc.).

III. ANALYSIS

    A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v.*

*Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

> B. <u>Whether Summary Judgment is Proper on Plaintiff's Claim of Wrongful Termination on the Basis of Gender Discrimination Under Title VII of the Civil Rights Act</u>

The Defendant asserts that summary judgment should be granted on Plaintiff's claim of wrongful termination. Plaintiff alleges that she was discharged for requesting a delay in an ordered rotation while the Defendant permitted similarly situated male employees occupying the same or similar positions to refuse similar ordered relocations without repercussion or termination. Specifically, Plaintiff claims the following: (1) Plaintiff's termination from her employment was involuntary; (2) Plaintiff states that a similarly situated male employee, Mr. Rogers, was treated differently than her; and (3) Defendant's asserted legitimate nondiscriminatory reason for terminating her employment is pretext for the fact that Defendant discriminated against the Plaintiff because of her gender.

Title VII provides in part that it is unlawful for an employer to discharge or otherwise discriminate against any individual based upon race, age, or gender. 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination in connection with wrongful discharge or termination, a plaintiff must show that: (1) plaintiff belongs to a protected group; (2) plaintiff was qualified for his/her job; (3) despite his/her qualifications, [s]he was discharged; and (4) the position from which plaintiff was discharged was not eliminated (or was filled or remained available following the plaintiff's discharge). *English v. Colorado Dept. of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001); *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 504 (1993). When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate nondiscriminatory reason for its action. *Id.* at 802-03. If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

In the case at hand, the Plaintiff alleges that the Defendant discriminated against her when they terminated her employment based upon her request to delay an FCG rotation out of state due to exigent family circumstances. Plaintiff further states that similarly situated male employees were treated differently than her. The Defendant, on the other hand, argues that Plaintiff was not terminated and cannot point to any similarly situated employee who was treated differently than her. The Defendant further argues that even if Plaintiff could prove a prima facie case of discrimination, Defendant has proven a legitimate, nondiscriminatory reason for her termination.

Turning to my analysis, it does not appear that either party disputes the fact that the Plaintiff is a member of a protected class and was qualified for her job with the Defendant. Thus, as set forth above, I find that the first and second elements of a prima facie claim for wrongful termination are satisfied. I now turn to the third element of a wrongful termination claim—plaintiff was discharged or terminated from her employment. After carefully considering the evidence submitted by both parties in connection with this issue and viewing it in the light most favorable to the Plaintiff, I find that Plaintiff demonstrated through her response to the Defendant's motion for summary judgment that there are genuine issues of material fact regarding this element of her wrongful termination claim.

First, there is a genuine issue of material fact as to whether the Plaintiff refused to relocate out of state due to the required rotation of her job or whether she requested a delay in her rotation. In fact, in its reply, the Defendant concedes that this is an issue of fact, but states that the factual dispute is irrelevant. I disagree. I find that this issue of fact is important in determining if the Plaintiff intended on resigning her position because she refused to comply with the Defendant's policies with respect to rotation or whether she requested a short delay due to her husband's illness. If Plaintiff requested a short delay (as she had done in the past), it would seem to suggest that she was not intending to voluntarily terminate her employment, but rather, stay with the company until she was better able to relocate out of state. If these facts are proven to be true, it may be suggested that the Defendant declined Plaintiff's request for the delay and terminated her employment. I find that this factual dispute is open to different

interpretations which impact an element of Plaintiff's wrongful termination claim. Thus, summary judgment is not appropriate. Accordingly, I find that there are genuine issues of material fact regarding Plaintiff's claim under Title VII, and that summary judgment is not proper on this claim.[1]

IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment (docket #36), filed September 28, 2007, is **GRANTED** as to Plaintiff's claims for breach of contract, waiver, breach of implied covenant of good faith and fair dealing, and willful breach of contract in favor of the Defendant and **DENIED** as to Plaintiff's claim for wrongful termination based on gender discrimination under Title VII of the Civil Rights Act.

Dated: April 15, 2008

                                                            BY THE COURT:

                                                            s/ Wiley Y. Daniel
                                                            Wiley Y. Daniel
                                                           U. S. District Judge

---

[1] In light of my finding, I need not address the remaining elements of a wrongful termination claim, nor the *McDonnell Douglas* burden shifting analysis.